## NEALE v. McKINSTRY.

1. A subscribing witness cannot prove the execution of an instrument of writing, (being the foundation of the action,) which is denied by plea, verified by affidavit, without having the instrument before him, at the time of deposing. The witness cannot, without inspection, swear to the genuineness of his own hand writing, or that of the obligor.

2. If the instructions given by the court are consistent with each other, and, taken together, constitute a correct exposition of the law applicable to the case, this court will not reverse the judgment, because a single instruction, taken by itself, is defective. Whilst erroneous instructions cannot be cured by subsequent instructions that are correct, a defective instruction, or an instruction that is not true under all contingencies, and is therefore not applicable to all the facts before the jury, may be supplied by the instructions that follow.

3. If there be no testimony whatever on a particular point, it is unnecessary for the court to inform the jury of that fact.

### Hayden for Appellant.

1st. That the court erred in permitting the note sued on to be read to the jury upon the proof adduced by plaintiff of its execution.

2d. That the court erred in giving to the jury the in-
structions prayed for by plaintiff.

3d. The court erred in not giving to the jury the instruc-
tions asked for by defendant.

4th. The court erred in overruling the motion for a new
trial.

### *Leonard for Appellee.*

1st. As to third persons, a partnership continues until proper notice of its dissolution is given. Cary on Partnership, 181, 2–3; Godfrey v. Turnbull, 1 Esp. 371; Parkin v. Crowther, 3 Esp. 248; Gow on Partnership, 306 & 307; Ketchum v. Clark, 6 John. Rep. 144; 3 Little Rep. 423; 2 Stark. Ev. 589.

2d. While a general notice of the dissolution is sufficient for the world at large. Wright & others v. Pulham, 2 Chitty Rep. 121; Lansons v. Ten Eyck, 2 John. Rep. 300; 6 John. R. 147, 148; Martin v. Walton & co., 1 McCord's R. 16; Graham v. Thompson, Peake, 42; Graham v. Hope, Peake 154.

Actual notice must be given to those who have dealt with the firm. Cary on Partnership, 181–2–3, and cases cited above.

3d. In the case at bar, there had been mutual dealings and credits between the plaintiff and defendants, and no notice, either general or actual, had been given of the dissolution of the partnership.

4th. The proof of the execution of the note sued on, was sufficient to entitle the note to go in evidence to the jury. 1 Phil. Ev. 413, note (a.)

### *Opinion of the Court by Napton, Judge.*

This was a petition in debt brought by Robert McKinstry, surviving partner of the firm of Robert McKinstry & co., against Daniel B. Neale, of the firm of Osburn & Neale. The note upon which suit was brought, is dated 21st Sep. 1836, and payable one day after date, for value received,

13

AUGUST TERM, and signed "Osburn & Neale." Defendant plead *nil debet*
1841.       *and non est factum*, verified by affidavit.

Neale        On the trial it appeared that Milton Osburn and Daniel
v.      B. Neale, were in partnership in the business of tavern keep-
McKinstry.  ing, in the town of Benton, in the State of Mississippi, du-
ring the year 1835, under the style of "Osburn & Neale."
Robert McKinstry & John McKinstry were merchants in
the same town, doing business under the style of "Robert
McKinstry & co." John McKinstry died in 1836, and the
note sued on was given by Osburn to close mutual accounts
between the firm of Osburn & Neale and Robert McKinstry
& co. The note was given in 1836, about eight months
after Osburn & Neale had ceased to do business as tavern
keepers in Benton.

There was evidence given by the plaintiff to show that
no notice of the dissolution of the firm of Osburn & Neale
had been given McKinstry & co., and that there had been
mutual dealings between the firms during the existence of
the partnership. The plaintiff offered to prove the execu-
tion of the note by the deposition of the subscribing wit-
ness, who testified, that the original note of which a copy
was given in his deposition, was executed in his presence
by Milton Osburn, one of the supposed firm of "Osburn &
Neale," and by him signed and delivered. This evidence
was objected to by defendant, but was allowed to go to the
jury.

The defendant proved that the business of tavern keeping
was discontinued by Osburn & Neale, at the expiration of
the year 1835, and that even during the existence of the
partnership, Osburn had alone conducted the business.
Neale being a citizen and resident of Missouri. It was also
proved, that McKinstry was a guest of the tavern, both
whilst it was conducted by Osburn & Neale, and after it
came into the hands of their successors.

At the instance of the plaintiff, the court instructed the
jury, that if they believe the note sued on was given by
Milton Osburn, and that a partnership had previously exist-
ed between Osburn & Neale, it will be presumed to have
been given for a partnership debt, unless the contrary be

shown: that if Osburn & Neale were in the habit of dealing with the plaintiffs, and never gave any special notice of the dissolution of the partnership to the plaintiffs, they are liable on this note: that to render the dissolution of the partnership effectual, notice must be given of it to the world, and if no such notice was given, the firm may be bound by a contract made by one partner in the usual course of business, and in the name of the firm, with a person who had no notice of the dissolution, and that the mere discontinuance of the business of tavern keeping in Benton was not of itself sufficient notice of the dissolution of the partnership. Several other instructions were given, which seem to be to the same purport, and therefore not material to be noticed. The court also instructed the jury, that there was no evidence of any notice of the dissolution of the partnership ever given to plaintiff.

At the request of the defendant, the court further instructed the jury, that the cessation of the partners in the business of tavern keeping, is evidence that the partnership in that business had ceased at that place, and if the jury believed from the evidence that the plaintiff knew of the cessation of the business at the time of the giving of the note, they ought to find for defendant. Several other instructions were asked by the defendant, which I deem it unnecessary to notice.

A verdict was found for the plaintiff, and a motion for a new trial was made and overruled.

It is assigned for error, that the circuit court admitted incompetent proof of the existence of the note, and gave improper instructions. Whether a subscribing witness can prove an instrument without having that instrument before him is, so far as I am apprised, a new question. That circumstance of itself would incline this court against such a rule of evidence, unless sound reason and general principles would require its adoption. The elementary works on evidence no where give countenance to the admission of such proof, and no authority has been shown to authorise it.

It is difficult to conceive how a witness proves the execution of an instrument which is denied by plea and affidavit,

AUGUST TERM, 1841.

Neale
v.
McKinstry.

A subscribing witness cannot prove the execution of an instrument of writing, (being the foundation of the action,) which is denied by plea, verified by affidavit, without having theinstrument before him, at the time of deposing. The witness can-

not, without inspection, swear to the genuineness of his own hand writing, or that of the obligor.

by swearing to the execution of another, which turns out upon inspection to be of the same tenor.

The identical instrument attempted to be proved, is not before the witness, and without inspection he cannot swear to the genuineness of his own handwriting, or that of the obligor. 1 Stark. Ev. 318.

It is not perceived, that any inconvenience or hardship is likely to result from the enforcement of the rules heretofore prevailing in relation to the attestation of deeds. If the subscribing witness resides beyond the jurisdiction of the court, his hand writing may be proved, and all which is required by the law is, that the best evidence of which the matter is susceptible, shall be produced, and where that is impracticable, secondary evidence is let in.

Though the note upon which suit is instituted is required to be filed with the clerk, the courts will, upon suitable suggestions, give the party leave to withdraw the original by leaving a copy with the clerk. Numerous instructions were asked of the court, in this case, by both parties, some of which were refused and some given. If the instructions given are consistent with each other, and taken together constitute a correct exposition of the law applicable to the case, a reversal of the judgment cannot be asked, because a single instruction, taken by itself, is defective. Whilst erroneous instructions cannot be cured by subsequent instructions that are correct, a defective instruction, or an instruction that is not true under all contingencies, and is therefore not applicable to all the facts before the jury, may be supplied by the instructions which follow.

If the instructions given by the court are consistent with each other, & taken together, constitute a correct exposition of the law applicable to the case, this court will not reverse the judgment, because a single instruction, taken by itself, is defective. Whilst erroneous instructions cannot be cured by subsequent instructions that are correct, a de-

Examining the instructions of the court in this case upon these principles, the law of the case appears in the main to have been correctly expounded to the jury. If the note sued on was executed by Osburn after the dissolution of the partnership between him and Neale, to close a partnership transaction, the defendant was liable, unless special notice was given to McKinstry of the disso'ution of the partnership, or unless McKinstry had *actual* knowledge of such dissolution. The fact, that the business of tavern keeping had ceased in the town where both the plaintiff and defend-

ant's partner resided, was a circumstance proper to go to the jury, as evidence that McKinstry had actual notice of the dissolution of the partnership, and taken in connection with such other facts as might be proved on the trial, was a subject for their deliberation, to which such weight and importance might be attached as in their opinion it deserved. As the judgment in this case is to be reversed for the error first assigned, it is not deemed necessary to notice every instruction which was given or refused by the circuit court; only those of the instructions given are believed entitled to particular animadversion.

The court instructed the jury, that the discontinuance of the business of tavern keeping was not of itself sufficient evidence of a dissolution of partnership, so far, I suppose, as third parties were concerned, and that there was no evidence of any notice of the dissolution of the partnership ever given to plaintiff.

Whilst this court would be unwilling to reverse a judgment because of such instructions as these, where, in point of fact, they were true, and consequently could have been no wise prejudicial to the parties, we are of opinion that a court is not bound to give such instructions. If testimony is offered which is incompetent, let it be excluded; if competent, and it goes to the jury, the triors of the fact may give such weight to the evidence as they think proper. If there be no testimony at all on a particular point, it is surely unnecessary that the court should inform the jury of that fact. They may be presumed to be as well apprised of that as the court. Nor is it the province of the court to determine upon the weight of evidence, except, perhaps, on motions for new trial. If competent testimony has been submitted to the jury, the sufficiency or insufficiency of that evidence is to be determined by the jury.

Judgment reversed and cause remanded.